1
2
3
4

Clarisse Chung (SB#260894)
Crossroads Legal Group
800 W. El Camino Real Ste 180
Mountain View, CA 94040
(650) 332-4905
clarisse@crossroadslegalgroup.com
Attorneys for Plaintiff

5
6
7
8

Michael Yesk (SB#130056)
Yesk Law
70 Doray Drive, Suite 16
Pleasant Hill, CA 94523
(925) 849-5525
yesklaw@gmail.com
Attorneys for Plaintiff

9

10 **UNITED STATES DISTRICT COURT**

11 **NORTHERN DISTRICT OF CALIFORNIA**

12

13 IRENE CARDENAS,

14          Plaintiff,

15          V.

16 CALIBER HOME LOANS, INC.; U.S. BANK
TRUST, N.A. AS TRUSTEE FOR LSF8
17 MASTER PARTICIPATION TRUST;
RUSHMORE LOAN MANAGEMENT
18 SERVICES, LLC; U.S. BANK NATIONAL
ASSOCIATION AS TRUSTEE FOR RMAC
19 TRUST SERIES 2016-CTT; SUMMIT
MANAGEMENT COMPANY, LLC; AND
20 DOES 1-10, INCLUSIVE,

21          Defendants.

22

23

Case No. 5:17-cv-04382-LHK

**PLAINTIFF'S OPPOSITION TO
DEFENDANT RUSHMORE LOAN
MANAGEMENT SERVICES, LLC'S
MOTION TO DISMISS COMPLAINT**

Hearing:    November 30, 2017
Time:      1:30 p.m.
Place:     Courtroom 8 – 4th Floor

Hon. Lucy H. Koh

24
25
26

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff IRENE CARDENAS ("Plaintiff") hereby submits this opposition to Defendant RUSHMORE LOAN MANAGEMENT SERVICES, LLC's ("Rushmore" or "Defendant") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). Plaintiff maintains that she has stated valid claims for wrongful foreclosure and violations of the California Homeowner Bill of Rights ("HBOR"). Plaintiffs' First Amended Complaint ("FAC") alleges multiple, specific factual bases indicating that Defendants lack standing to foreclose and violated California Civil Code Section 2924.17. As such, Defendants' Motion should be denied.

## II.   FACTUAL BACKGROUND

On or around May 18, 2004, Plaintiff IRENE CARDENAS recorded a deed of trust secured against her property located at 347 Hillcrest Avenue, Marina, California 93933 ("Subject Property"). The deed of trust listed Alternative Financing Corporation ("AFC") as the beneficiary with Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee, and purportedly Stewart Title of California, Inc. ("Stewart Title") as the trustee. On or around August 16, 2012, Defendant MERS as nominee for AFC purported to assign all beneficial interest in Plaintiff's deed of trust ("DOT") to HSBC Mortgage Services ("HSBC" or "Defendant") through a "Corporate Assignment of Deed of Trust."

On or around January 21, 2014, Defendant Caliber Home Loans, Inc. ("Caliber" or "Defendant") as purported attorney-in-fact for HSBC purported to execute and record an "Assignment of Mortgage/Deed of Trust" in favor of U.S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust ("LSF8 Master Participation Trust"). Plaintiff alleges on information and belief that the LSF8 Master Participation Trust was merely a participation agent to the securitization of Plaintiff's loan. As such, Plaintiff further alleges that the LSF8 Master Participation Trust was not the beneficiary of Plaintiff's deed of trust because it did not own the entirety of Plaintiff's loan but rather only a forward interest in its servicing rights. Plaintiff

1  alleges on information and belief that the LSF8 Master Participation Trust therefore lacked

2  authority to transfer the beneficial interest in Plaintiff's loan.

3         On February 28, 2014, Plaintiff filed for Chapter 13 bankruptcy in the U.S. Bankruptcy

4  Court for the Northern District of California ("Bankruptcy Court") as she was going through

5  some financial difficulties. On January 27, 2015, the Bankruptcy Court entered an order

6  confirming Plaintiff's bankruptcy plan, which included confirmation of monthly mortgage

7  payments of $1,142.67 that Plaintiff would begin making to Caliber. Plaintiff consistently made

8  each and every one of her monthly payments of $1,142.67 under Plaintiff's Chapter 13 plan. On

9  or around October 13, 2015, Caliber and Plaintiff also filed a stipulation for adequate protection,

10  whereby Plaintiff agreed to continue making monthly payments of $1,142.67 throughout the

11  pendency of the review of Plaintiff's loan modification application.

12         From October 2015 to November 2016, Plaintiff continued to consistently make each and

13  every one of her monthly payments of $1,142.67 under Plaintiff's Chapter 13 bankruptcy plan.

14  Caliber never accepted or denied Plaintiff's request for a loan modification. However, on or

15  around September 2016, Plaintiff alleges that Caliber purportedly sold her loan and deed of trust

16  to Defendant Rushmore Loan Management Services, LLC ("Rushmore" or "Defendant") and

17  transferred Plaintiff's loan modification application to Rushmore. From that point on, Rushmore

18  began to hold itself out as the owner or servicer of Plaintiff's loan and also solicited from

19  Plaintiff a new loan modification application. Rushmore continued to accept Plaintiff's Chapter

20  13 payments for the first couple of months they serviced her loan.

21         Then, on or around November 30, 2016, before any decision had been rendered on

22  Plaintiff's loan modification application, Plaintiff received a letter from Rushmore, returning her

23  payment of $1,142.67 "for the following reason(s): Other: Please contact customer service."

24  When Plaintiff called Rushmore's customer service department, she was told by Rushmore that

25  she needed to make "full" and "not partial" payments until her modification was granted or

26  denied. Plaintiff did not understand this representation as it was in contravention to the terms of

the adequate protection stipulation she entered into with Defendants on October 13, 2015 –

1  which provided that she would continue making payments of $1,142.67 until a decision had been

2  given with respect to her application for a loan modification.

3        On or around January 13, 2017, Defendant Caliber as purported attorney-in-fact for the

4  U.S. Bank Trust, N.A. as Trustee for the LSF8 Trust assigned all beneficial interest in Plaintiff's

5  DOT to the U.S. Bank National Association ("U.S. Bank N.A."), not in its individual capacity

6  but solely as trustee for the RMAC Trust, which the assignment listed as "Series 2016-CTT."

7  Plaintiff alleges this transfer was void because (1) the LSF8 Master Participation Trust held only

8  a forward interest in the servicing rights to Plaintiff's loan and, as such, had no more to transfer

9  to U.S. Bank N.A. than servicing rights; and (2) even if the LSF8 Master Participation Trust

10 owned all beneficial interest in Plaintiff's loan, the January 13, 2017 transfer constituted a post-

11 closing date transfer of an asset in violation of Section 860 of the Internal Revenue Code and the

12 terms of the Trust Pool pooling and servicing agreement ("PSA") that required all assets to be

13 transferred to the trust no later than ninety (90) days after the trust start-up date.

14       Notwithstanding this fact, on or around May 24, 2017, Defendant Rushmore as purported

15 attorney-in-fact for U.S. Bank N.A. purported to execute and record a substitution of trustee,

16 substituting Defendant Summit Management Company, LLC ("Summit" or "Defendant") as

17 trustee under Plaintiff's DOT. On or around May 30, 2017, Summit recorded a notice of trustee's

18 sale on Plaintiff's property, scheduling a sale date of July 5, 2017 on Plaintiff's home. Moreover,

19 despite Defendant Rushmore's ongoing representations regarding its status as service of

20 Plaintiff's loan, Defendant Caliber continued to be listed as the ostensible servicer of Plaintiff's

21 loan in the documents that were recorded in 2017, including a substitution of trustee and a notice

22 of trustee's sale. Moreover, Defendants' actions were wrongful as they were premised on

23 Rushmore's violation of the adequate protection order that was filed as a part of Plaintiff's

24 Chapter 13 bankruptcy proceeding.

25 ### III.   STANDARD OF REVIEW

26       Under Federal Rule of Civil Procedure 12(b)(6), a Motion to Dismiss tests the ability of a

complaint to allege facts sufficient to state a plausible claim for relief. *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007). A complaint that contains sufficient factual allegations "to raise a right to relief above the speculative level" will survive a motion to dismiss. *Id*. A complaint must state a claim that is facially plausible, requiring facts showing more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating whether a complaint meets this standard, the court is not required to assume the truth of Plaintiff's legal conclusions but must take Plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

## IV.   **DISCUSSION**

### A.   **Plaintiff Has Stated Facts Sufficient to State a Cause of Action for Violations of California Civil Code § 2924.17**

#### i.   *Defendants Violated Section 2924.17 by Recording Inaccurate and Incomplete Foreclosure Documents*

Under California Civil Code Section 2924.17 ("Section 2924.17"), "a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure… shall be *accurate* and *complete* and supported by competent and reliable evidence." Cal. Civ. Code § 2924.17, subd. (a). Subsection (b) of Section 2924.17 further requires a "mortgage servicer [to] ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower s loan status and loan information."

Defendant Rushmore errs in its motion to dismiss Plaintiff's Section 2924.17 claim in its myopic focus on one part of the statute to the exclusion of other. Rushmore's motion to dismiss focuses entirely on Section 2924.17(b)'s language regarding the mortgage servicer's obligation to "review[] competent and reliable evidence to substantiate the borrower's default" while notably omitting any mention of Plaintiff's claims that Defendants violated Section 2924.17 by recording foreclosure documents that were not "accurate and complete and supported by

competent and reliable evidence." Cal. Civ. Code § 2924.17(a).

Specifically, Plaintiff's complaint alleges, among other things, that on or around January 21, 2014, Defendant Caliber Home Loans, Inc. ("Defendant" or "Caliber") as purported attorney-in-fact for HSBC Mortgage Services ("HSBC" or "Defendant") executed and recorded an assignment of deed of trust in favor of U.S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust ("LSF8 Master Participation Trust"). This is the despite the fact that the LSF8 Master Participation Trust was not the beneficiary of Plaintiff's deed of trust because it did not own the entirety of Plaintiff's loan but only a forward interest in its servicing rights. Notwithstanding this fact, on or around January 13, 2017, the LSF8 Master Participation Trust executed an another assignment of deed of trust in which it purported to assign all beneficial interest in Plaintiff's DOT to the U.S. Bank National Association ("U.S. Bank N.A."), not in its individual capacity but solely as trustee for the RMAC Trust, which the assignment listed as "Series 2016-CTT." The recordation of this assignment of deed of trust by Defendants violated Section 2924.17's requirement that recorded foreclosure documents be "accurate and complete and supported by competent and reliable evidence" because – as owner of only a forward interest in the servicing rights of Plaintiff's loan – the LSF8 Master Participation Trust was not the true beneficiary and therefore lacked authority to transfer the beneficial interest in Plaintiff's loan.

Despite this fact, Defendant Rushmore subsequent purported to record additional inaccurate documents when they recorded subsequent substitutions of trustee and notices of default and trustee's sale, each of which was premised on the void January 13, 2017 assignment of deed of trust from the LSF8 Master Participation Trust to U.S. Bank N.A. as trustee for the RMAC Trust. Such conduct was violative of Section 2924.17 and Plaintiff's first amended complaint ("FAC") stated facts sufficient to state a claim under this Homeowner Bill of Rights ("HBOR") provision.

### ii.    Defendant's Standing Arguments are Misplaced

Defendant's arguments related to Plaintiff's lack of standing to bring a Section 2924.17 claim are equally misplaced. Rushmore attempts to perform some legal sleight of hand by

attempting to frame Plaintiff's allegations regarding Defendants' Section 2924.17 violations as an attempt to challenge Defendants' standing to foreclose. In essence, Defendant would incorporate the analysis regarding Plaintiff's standing to bring a wrongful foreclosure claim within the analysis regarding Plaintiff's standing to bring a claim for violations of Section 2924.17 – HBOR's provision related to the requirement that recorded foreclosure documents be accurate and complete and supported by competent and reliable evidence. In fact, the issues are not interrelated and there is no California case law Defendant has pointed to in which California courts have addressed the issue of standing to bring a claim for violations of Section 2924.17.

By virtue of being a homeowner and an owner of residential real property that comes within the purview of the HBOR, Plaintiff automatically has standing to bring claims for violations of the HBOR. *See e.g.* Cal. Civ. Code § 2924.15. Moreover, as will be addressed in more detail below, even if the standing analysis for a wrongful foreclosure claim could be incorporated into the standing analysis for a Section 2924.17 claim, Defendant's arguments would still and its Motion should be dismissed.

### iii.        Defendant's Violations of Section 2924.17 Were "Material"

Finally, Defendant errs in its contention that no viable Section 2924.17 claim exists because Defendants' violations were not "material." In support of Defendant's argument that its Section 2924.17 violations were immaterial, Defendant only cites one district court case in support of its proposition that "material" refers to "whether the alleged violation affected a plaintiff's obligations or the modification process." Def. Mtn. at p. 3. In fact, numerous courts interpreting this same provision have adopted much broader interpretations of what constitutes a "material" violation. "Some [courts] have concluded that materiality is a factual question that should not be resolved on a motion to dismiss. Others have suggested that every violation that contravenes the purpose of HBOR is a material violation. Still others have considered whether it is 'plausible' that the violation caused the plaintiff to suffer damages." *Rahbarian v. JP Morgan Chase* (E.D. Cal. 2015) at p. *3 (internal citations omitted). At least one court has found that improperly recording a notice of default or notice of trustee's sale are both material

1    violations as provided in section 2924.12 because "they are the very essence of the statute and

2    failure to abide by the straightforward language of the statute is a material violation." *Rizk v.*

3    *Residential Credit Sols., Inc.* (C.D. Cal. 2015) 2015 WL 573944, at p. *12.

4         Under these standards, Defendant's actions were clearly material as they violated the

5    very essence of the statutes enacted by the California Legislature for the protection of

6    homeowners. As such, Defendant's Motion should be dismissed.

7         **B.**    **Plaintiff's FAC States a Valid Claim for Wrongful Foreclosure**

8              **i.    *Plaintiff Has Standing to Bring a Wrongful Foreclosure Challenge***

9         As a preliminary matter, Plaintiff contends that a wrongful foreclosure action is not only

10   properly brought after a foreclosure sale has already occurred. Numerous courts have evaluated

11   wrongful foreclosure claims where it has been alleged that the foreclosing party lacks standing to

12   foreclose as the prejudice that could result to the borrower is clear. *See Tamburri v. Sun Trust*

13   *Mortgage, Inc*. (2011) 2011 WL 6294472 *14 (the threat of foreclosure by the wrong party

14   would certainly be sufficient to constitute prejudice to the homeowner because there is no power

15   of sale without a valid notice of default"); *see also Castillo v. Skoba*, 2010 WL 3986953 at*2

16   ("The power of sale in a nonjudicial foreclosure may only be exercised when a notice of default

17   has first been recorded.... [A]ny foreclosure sale based on a void notice of default is also void.").

18   In the same way, in *Sacchi v. Mortgage Electronic Registration Systems, Inc*. 2011 WL 2533029,

19   the *Sacchi* Court expressed dismay when confronted with the argument that someone can seek

20   and obtain a foreclosure sale of one's home regardless of whether that entity had any legal

21   authority to foreclose. *Id.* at 7.

22        Moreover, though Plaintiff acknowledges that the California Supreme Court – in its

23   seminal decision in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 – did not

24   address the issue of whether or not a borrower could preempt a threatened nonjudicial

25   foreclosure by a suit questioning the foreclosing party's right to proceed, it is also significant to

26   note that the Court's holding did not bar such suits. Rather, the reasoning applied by *Yvanova* to

     grant standing to borrowers challenging the authority of a foreclosing entity to foreclose based

on allegation of a void (as opposed to a voidable) assignment, are equally applicable to a pre-foreclosure lawsuit. As established by California's high Court, "the principle that only the entity currently entitled to enforce a debt may foreclose on the mortgage or deed of trust securing that debt is not, or at least should not be, controversial. It is a 'straightforward application[] of well-established commercial and real-property law: a party cannot foreclose on a mortgage unless it is the mortgagee (or its agent).'" 62 Cal.4th at 928, citing Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title (2013) 63 Duke L.J. 637, 640.  "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security. It is no mere 'procedural nicety,' from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. [citation]" *Id.* at 938.

At least one court in this district has similarly held that the reasoning of *Yvanova* is equally applicable to *pre*-foreclosure cases as it is to post-foreclosure cases. *See Lundy v. Selene Finance, LP,* 2016 WL 1059423 (N. D. Cal. Mar. 17, 2016) ("Lundy Order"). As noted by the *Lundy* court, until the California Supreme Court specifically rules on this issue, it is the task of the federal district courts to "interpret the guidance of *Yvanova* and 'predict how the highest court would resolve' this issue in the pre-foreclosure context." Lundy Order at p. 16. The *Lundy* court then applied the reasoning of *Yvanova* and concluded that – in its assessment – the California Supreme Court would again reject the reasoning of *Jenkins v. JPMorgan Chase Bank*, 216 Cal.App.4th 495, 511 (2013), the case Defendant Rushmore so heavily relies on.

Plaintiff respectfully submit that the *Lundy* court's analysis is more persuasive. Though Defendant Rushmore relies heavily on *Jenkins* for its argument that California courts do not allow preemptive suits to determine the authority of an entity to foreclose, its argument is inapposite because it leaves out a fundamental distinction between "preemptive" suits and suits in which a "specific factual basis" is alleged that calls into question the standing of an entity to foreclose. What Defendant omits to mention in its Motion is that the language it cites from *Jenkins* was originally taken from *Gomes v. Countrywide Home Loans, Inc.* (2011) 192

Cal.App.4th 1149, 1156, in which the appellate court actually _recognized_ the legitimacy of challenges to the standing of a foreclosing entity to foreclose where – as here – there was a "*specific factual basis* for alleging that the foreclosure was not initiated by the correct party." 192 Cal.App.4th at 1154 (emphasis added) (discussing three cases that recognized the right to bring a legal challenge to the standing of a party to foreclose); *see also Herrera v. Deutsche Bank National Trust Co*. 196 Cal.App.4th 1366, 1378-1379 (2011) (denying bank summary judgment on wrongful foreclosure claim because it failed to show a chain of ownership that would establish it as the true beneficiary under the deed of trust); *Glaski v. Bank of America, N.A.*, 218 Cal.App.4th 1079, 1097 (upholding the right of a homeowner to raise questions regarding the chain of ownership by contending that defendants were not the lenders or beneficiaries and did not have the authority to foreclose); *Barrionuevo v. Chase Bank, N.A.,* 885 F.Supp.2d 964, 972 (N.D. Cal. 2012) ("[O]nly the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law…Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of Default and initiate nonjudicial foreclosure."); *Ohlendorf v. Am. Home Mortg. Servicing*, 279 F.R.D. 575, 583 (E.D. Cal. 2010) (allowing the homeowner to pursue a claim for wrongful foreclosure where the foreclosing party relied on a series of backdated transfers of a deed of trust's beneficial interest to pursue foreclosure); *Javaheri v. JP Morgan Chase Bank, N.A.*, 2011 U.S. Dist. Lexis 62152 at * 12-14 (C.D. Cal. June 2, 2011, No. CV10-08185ODW) (upholding a claim for wrongful foreclosure based on allegations that lender sold promissory note to investment pool, thereby precluding lender's successor in interest from obtaining the note when it acquired the original lender's assets). In the same way as those cases cited by the *Gomes* court, Plaintiff's FAC does not sound in abstract theories but in specific factual bases demonstrating the lack of standing by Defendant to have foreclosed.

///

### ii. Plaintiff Suffered Prejudice as a Result of Defendants' Actions in Initiating Foreclosure Despite Lacking Standing to Do So

Defendant also errs in its argument that Plaintiff suffered no prejudice as a result of Defendant's actions. California courts have clearly established that "[a] homeowner experiences prejudice or harm when an entity with no interest in the debt forecloses." *Sciarratta v. U.S. Bank National Assn*. (2016) 247 Cal.App.4th 552, 566. "When a non-debtholder forecloses, a homeowner is harmed because he or she has lost her home to an entity with no legal right to take it." *Id.*; *see also Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 (a foreclosed-upon borrower *clearly* meets the general standard for standing to sue by showing an invasion of his or her legally protected interests). Moreover, "the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment." *Yvanova, supra*, 62 Cal.4th at p. 937. Thus '[t]he identified harm — the foreclosure — can be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment.'" *Id.*

In the same way, the *Lundy* court in this district agreed that though the "prejudice in the post-foreclosure context is, of course, more obvious than in pre-foreclosure…it is clear that *Yvanova*'s prejudice analysis does not depend on the existence of a completed foreclosure sale—rather, it focuses more broadly on the unfairness of requiring a plaintiff to be subjected to foreclosure proceedings by an entity that has no right to initiate those proceedings." Lundy Order at p. 17. For that reason, the district court ultimately concluded that "Yvanova's reasoning applies just as strongly to preforeclosure plaintiffs." *Id.* "Just as with post-foreclosure plaintiffs, the "identified harm"—initiation of foreclosure proceedings—can "be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment. The prejudice is self-evident given that "the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment," regardless of whether the plaintiff still has title or possession of her home. A plaintiff who has already lost her home has undoubtedly suffered prejudice; but so has a plaintiff who is at imminent risk of doing so." *Id.* at p. 17-18.

### iii. Plaintiff is Not Required to Allege Tender

Finally, Defendant's arguments related to tender are also inapposite. Defendant's

arguments are based on outdated understandings of the jurisprudence around wrongful

foreclosure actions. Specifically, as recently as last year, California courts have expressly held

that tender is not required to bring claims under the HBOR. *See Valbuena v. Ocwen Loan*

*Servicing, LP* (2015) 237 Cal.App.4th 1267 ("Nothing in the language of HBOR suggests that a

borrower must tender the loan balance before filing suit based on a violation of the requirements

of the law. Indeed, such a requirement would completely eviscerate the remedial provisions of

the statute."); *Alvarez v. BAC Home Loans Servicing* (2014) 228 Cal.App.4th 941.

Even if this were not the case, California courts have clearly held that the tender

requirement both does not apply in a pre-foreclosure context and does not apply when an

assignment would be void as opposed to merely voidable. *See Dimock v. Emerald Properties*

(2000) 81 Cal.App.4th 868, 878. Courts that have applied the tender rule have largely done so in

the context of a foreclosure sale that has happened and not one that is pending. *Karlsen v. Am.*

*Sav. &amp; Loan Ass'n* (1971) 15 Cal.App.3d 112, 121; *FPCI RE-HAB 01 v. E&G Investments,*

*Ltd.* (1989) 207 Cal.App.3d 1018, 1021; see also *Chan Tang v. Bank of America, N.A.*, 2012 WL

960373 (C.D. Cal.) *3. Applying the tender rule is not a "useless act" in cases where a

foreclosure sale had not occurred because no judicial resources would be required to unwind an

already-completed foreclosure sale. *Chan, supra*, at *5. It is not the case, however, that

"postponing a sale when there are serious defects in a bank's compliance with California's

comprehensive statutory foreclosure scheme is a useless act." *Id*. The burden on banks for

complying with California's foreclosure scheme is already very low and "does not ask for much

from foreclosing parties." *Id*. at *6.

Similarly, tender is also not required where a foreclosure sale would be void and not

merely voidable. The tender rule is not a blanket rule that should be applied to all foreclosure

cases. Rather, "tender may not be required where it would be inequitable to do so." *Onofrio v.*

*Rice* (1997) 55 Cal. App. 4th 413, 424 (affirming trial court's grant of relief to plaintiff on

rescission claim although plaintiff failed to tender); *see also Lona v. Citibank, N.A.* (2011) 202

Cal. App. 4th 89, 113 ("tender may not be required where it would be inequitable to impose such

1  a condition on the party challenging the sale"); *Humboldt Sav. Bank v. McCleverty* (1911) 161

2  Cal. 285, 291. Significantly, it is a well-established principle that tender is not required where a

3  foreclosure is alleged to be void and not merely voidable. *See e.g. Dimock v. Emerald*

4  *Properties, Inc.* (2008) 81 Cal.App.4th 868; *Tamburri*, 2011 WL 6294472 at *4 ("where a sale is

5  void, rather than simply voidable, tender is not required").

6       As such, Defendant's arguments regarding tender are inapposite and its Motion should be

7  denied.

8  **V.    CONCLUSION**

9       Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants'

10  Motion to Dismiss Plaintiff's Complaint in its entirety or grant leave to amend if the Motion to

11  Dismiss is granted.

12

13  DATED: August 22, 2017                Respectfully submitted,

14

15

16                                /s/ Clarisse Chung_____
                                  Clarisse Chung
17                                Crossroads Legal Group
                                  Michael Yesk
18                                Yesk Law
                                  Attorneys for Plaintiffs
19